*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2003 FED App. 0345P (6th Cir.)
File Name: 03a0345p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

v.

Nos. 02-1191/1293

ROBERT ANTHONY JOHNSON
(02-1191) and TODD STUUT
(02-1293),
*Defendants-Appellants.*

───────────────

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 01-00128—Robert Holmes Bell, Chief District Judge.

Argued: June 17, 2003

Decided and Filed: September 25, 2003

Before: BOGGS and GILMAN, Circuit Judges; and
MARBLEY, District Judge.[*]

───────────────

[*] The Honorable Algenon L. Marbley, United States District Judge for the Southern District of Ohio, sitting by designation.

1

───────────────

## COUNSEL

**ARGUED:** David L. Kaczor, Grand Rapids, Michigan, Frank Stanley, Grand Rapids, Michigan, for Appellants. Timothy P. VerHey, UNITED STATES ATTORNEY, Grand Rapids, Michigan, for Appellee. **ON BRIEF:** David L. Kaczor, Grand Rapids, Michigan, Frank Stanley, Grand Rapids, Michigan, for Appellants. Timothy P. VerHey, Brian P. Lennon, UNITED STATES ATTORNEYS, Grand Rapids, Michigan, for Appellee.

───────────────

## OPINION

───────────────

BOGGS, Circuit Judge. Co-defendants Robert Johnson and Todd Stuut appeal their sentences received after pleading guilty to conspiracy to distribute methamphetamine. Both appellants raise the same claims: they object to the two-level enhancement imposed by the district court for the possession of a weapon during the commission of a drug offense, and to the related denial of "safety-valve" status and the corresponding two-level reduction that such status would entail. We affirm.

### I

Both Johnson and Stuut entered guilty pleas, pursuant to written plea agreements. They both objected to the pre-sentencing report for two reasons relevant to this appeal: (1) they objected to a two-level enhancement for possession of a weapon; and (2) they objected to the denial of "safety-valve" status and its corresponding two-level reduction. *See* U.S.S.G. §§ 2D1.1(b)(1), 2D1.1(b)(6), and 5C1.2(a)(2). In both cases, the government moved for a downward departure,

pursuant to U.S.S.G. § 5K1.1, for the defendants' substantial assistance to the authorities.

At their respective sentencing hearings, the district court overruled appellants' objections and granted the government's motions for downward departure. On January 31, 2002, Johnson was sentenced to 120 months of imprisonment. On February 28, 2002, Stuut was sentenced to 108 months of imprisonment. Both appellants filed timely appeals.

## II

A district court's determination that a defendant possessed a firearm during a drug crime is a factual finding that this court reviews for clear error. *United States v. Pruitt*, 156 F.3d 638, 649 (6th Cir. 1998) (quoting *United States v. Elder*, 90 F.3d 1110, 1133 (6th Cir. 1996), *cert. denied*, 519 U.S. 1131 (1997)). The sentencing guidelines provide that a defendant's base offense level should be increased by two levels if the court determines that he possessed a dangerous weapon during the commission of an offense involving drugs. U.S.S.G. § 2D1.1(b)(1). The government must prove by a preponderance of the evidence "that (1) the defendant actually or constructively 'possessed' the weapon, and (2) such possession was during the commission of the offense." *Pruitt*, 156 F.3d at 649. "Constructive possession of an item is the 'ownership, or dominion or control' over the item itself, 'or dominion over the premises' where the item is located." *Ibid.* (quoting *United States v. Sanchez*, 928 F.2d 1450, 1460 (6th Cir. 1991)). If the offense committed is part of a conspiracy, it is sufficient if the government establishes "that a member of the conspiracy possessed the firearm and that the member's possession was reasonably foreseeable by other members in the conspiracy." *United States v. Owusu*, 199 F.3d 329, 347 (6th Cir. 2000). Once it has been established by the government that a defendant was in possession of a firearm, the burden shifts to the defendant to establish that "it

is clearly improbable that the weapon was connected to the offense." U.S.S.G. § 2D1.1, comment. (n.3).

The "safety-valve" provision of the sentencing guidelines states that "[i]f the defendant meets the criteria set forth in subdivisions (1)-(5) of subsection (a) of § 5C1.2 (Limitation on Applicability of Statutory Minimum Sentences in Certain Cases), decrease by **2** levels." U.S.S.G. §2D1.1(b)(6). The district court's determination that Johnson and Stuut possessed a firearm rendered them ineligible to receive a two-level reduction because they did not meet the conditions of § 5C1.2(a)(2) ("the defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense").

## III

The defendants' pre-sentencing reports state that Johnson and his partner, Kevin Tillett, would travel from California to Michigan to supply Dawn Makos with methamphetamine. Makos would then supply the methamphetamine to her customers, Kenneth Hatfield and Stuut. All five were charged with the conspiracy. Stuut also stored methamphetamine for Makos and acted as her enforcer in the conspiracy, ensuring that drug debts were paid.[1] Sometime during the Fall of 2000, Tillett beat Hatfield with a PM-11, a 9-mm semiautomatic pistol, because Hatfield owed money to Makos. The firearm used in the beating was seized by police at Makos's residence during the execution of a federal search warrant on January 10, 2001.

According to Stuut, Makos asked him to acquire a handgun for her because she needed protection. He bought it for $500 and resold it to her. Dawn Makos testified that Johnson and Tillett had requested that she acquire a gun, and that they paid

---

[1]Stuut vigorously denies this.

for the gun by subtracting its cost from money she owed them from previous methamphetamine transactions.

## A.   Robert Johnson

The district court determined that Johnson possessed a firearm during the conspiracy.  The district court found that the weapon in question was "not an innocent weapon."  It found that the "weapon was acquired and kept in conjunction with drug activities" and that "Mr. Johnson and Mr. Tillett were acting together . . . ."  The court further found that "this weapon was purchased and the deduction for its price . . . was made from the price of methamphetamine with the consent and knowledge of Mr. Johnson in concert with Mr. Tillett . . ." or vice versa.  Therefore, the court found, the "possessory interest of Mr. Johnson was clearly constructive . . . ."

Johnson argues that the district court erred when it applied the enhancement to his sentence because he was never in possession of a firearm.  He argues that, although he was present at Hatfield's beating, he did not participate and therefore did not use the weapon, was never in possession of it, and that it was not reasonably foreseeable to him that a co-conspirator would possess a firearm.  Moreover, he argues that the government conceded at the sentencing hearing that it would not be able to present any evidence that he physically possessed the gun.

The district court did not err when it applied the two-level sentence enhancement to Johnson's sentence.  However, it should have relied upon the stronger ground that Johnson was a member of a conspiracy and could reasonably foresee another member's possession of a firearm.  In fact, he did see his co-conspirator use the firearm to beat another co-conspirator for failure to pay a drug debt.

There was evidence that Johnson participated in the purchase of the firearm and helped pay for it.  He knew that

Tillett, his partner, had the gun during the commission of their crimes.  He and Tillett requested that Makos acquire the gun.  He was well aware that it would be used by his co-conspirators in the furtherance of the conspiracy.  The government proved by a preponderance of the evidence that it was reasonably foreseeable by Johnson that a co-conspirator would possess a firearm in the commission of the drug conspiracy.  The district court did not clearly err by finding that Johnson possessed a firearm.  Johnson did not present any evidence that "it [wa]s clearly improbable that the weapon was connected to the offense."  U.S.S.G. § 2D1.1, comment. (n.3).  The district court properly enhanced Johnson's sentence by two levels.

## B.   Todd Stuut

The district court determined that Stuut possessed a firearm during the commission of the drug conspiracy.  The district court first found that the weapon in question was to be used for "assaultive or defensive purposes."  The court also found that "[Stuut's] possessing it for purposes of purchasing and then his passing it on to Ms. Makos with the financial interaction coming the other way and her acquisition of it and its use thereunder is in fact consistent with a joint possession as part of a conspiratorial conduct . . . ."

Stuut argues that the district court erred when it concluded that he knew that Makos intended to use the gun to further the drug conspiracy.  He maintains that she lied to him about her reasons for needing the gun.  He claims that Makos told him that she needed the gun for self-protection, and did not say that she would give the gun to her drug suppliers.  He argues that his brief possession of the gun was not drug-related, and therefore that it is clearly improbable that his possession had to do with his drug crimes.  He also argues that he could not reasonably foresee what his co-conspirator would do with the weapon.  Finally, he argues that the court's joint possession theory is clear error.

The government met its burden of showing that Stuut actually possessed the firearm. He admitted buying it and reselling it to Makos. The burden then shifted to Stuut to show that "it [wa]s clearly improbable that the weapon was connected to the offense." U.S.S.G. § 2D1.1, comment. (n.3). While Stuut claims that he believed he was buying the gun for Makos for her self-protection, the district court did not clearly err by finding that this did not meet the burden of showing that it was clearly improbable the weapon was connected to the offense. Makos was Stuut's drug supplier and he occasionally kept drugs for her. He knew quite well that she was involved in illegal conduct.

We emphasize that the "clearly improbable" standard is a difficult burden to meet in the first instance at sentencing. In order to prevail on appeal, a defendant must show that a district court committed clear error in finding that he or she has not met the "clearly improbable" burden of proof. A district court's finding is clearly erroneous if "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948). We give great deference to the district court's credibility determinations as it is in the best position to observe witnesses. *United States v. Hill*, 195 F.3d 258, 264-65 (6th Cir. 1999).

We hold that the district court did not commit clear error in determining that Stuut did not meet his burden of showing that it was clearly improbable the firearm was connected to the offense. Stuut bought a gun for his drug supplier in the midst of a drug conspiracy, and we defer to the district court's decision to reject Stuut's argument that his alleged reliance on Makos's statement made it "clearly improbable" that the firearm would be connected to the offense. The government is *not* required to show that the firearm possession, once shown, is related to the drug crime. The *defendant* must show, not that there is a possible innocent explanation, nor even that the gun was "probably" not connected to the

offense, nor yet that it is "improbable" that the gun was so connected, but, even more, that it was "*clearly* improbable." (Emphasis added.) The two-level enhancement was properly applied.

## IV

As we have held that the two-level enhancement applied pursuant to § 2D1.1(b)(1) was properly applied to both defendants, both are ineligible for "safety-valve" status. We therefore AFFIRM both sentences.