**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Phillip E. LIKINS, Defendant–**
**Appellant.**

**No. 01–6252.**

United States Court of Appeals,
Sixth Circuit.

Dec. 3, 2003.

Candace G. Hill, Terry M. Cushing, Mark L. Miller, Asst. U.S. Attorney, U.S. Attorney's Office, Louisville, KY, for Plaintiff–Appellee.

R. Kenyon Meyer, Kevin M. Norris, Dinsmore & Shohl, Louisville, KY, for Defendant–Appellant.

Before DAUGHTREY and COLE, Circuit Judges; and SARGUS, District Judge.*

* The Honorable Edmund A. Sargus, Jr., United States District Judge for the Southern District of Ohio, sitting by designation.

SARGUS, District Judge.

Phillip E. Likins entered a conditional plea of guilty to possession with intent to distribute 100 kilograms or more of marijuana in violation of 21 U.S.C. § 841(a)(1). Pursuant to Rule 11(a)(2) of the Federal Rules of Criminal Procedure, Likins reserved the right to appeal the decision of the district court denying his motion to suppress evidence seized from his real property by law enforcement authorities.

On appeal, Likins asserts that the district court erred in denying his motion to suppress and contends that the affidavit submitted to a state court judge was insufficient to form the basis for the issuance of a search warrant. In addition, Likins contends that the district court erred in imposing a two-level enhancement under U.S.S.G. § 2D1.1(b)(1) for possession of a firearm during a drug offense and that the district court failed to apply the safety valve adjustment under U.S.S.G. § 5C1.2. For the reasons set forth below, the decision rendered and sentence imposed by the district court are AFFIRMED in all respects.

## I.

The search warrant challenged by Likins was issued by a state judge of the district court of Grayson County, Kentucky on October 27, 2000. Detective Billy Edwards, an officer with the Elizabethtown Police Department and a member of the Hardin County Narcotics Task Force applied for the warrant and submitted a five page affidavit in support of the application.

The affidavit begins with a description of Edwards's contact with Drug Enforcement Administration ("DEA") Special Agent Steve Neher. The affidavit recounts:

On the 27th of October 2000, at approximately 0515 hours, affiant received the following information: Affiant was contacted by S/A Steve Neher of the Drug Enforcement Administration (DEA). S/A Neher advised he had been in contact with a Confidential Reliable Source (CRS) who stated that a person known to the CRS as Phillip Likins was currently in possession of a large quantity of marijuana. The CRS had advised the marijuana was inside a semi-tractor sleeper at a residence in Grayson County.

As a result of the contact with S/A Neher, I then spoke with the CRS. The CRS advised that a Phillip Likins was involved in the Distribution of Marijuana, that he would go to El Paso, Texas and acquire the marijuana, bring it back to Kentucky and then it would be distributed. Stated Likins and his wife Beverly were from the Corbin, Kentucky area and they had only been living over in Grayson County outside of Caneyville, Ky. for approximately 1 to½ years.

Stated that Floyd Likins, a brother to Phillip was also staying at the residence in Grayson County and he was also from the Corbin area. Stated Phillip and Floyd went back and forth between Caneyville and Corbin.

The CRS stated Phillip did not put vehicles in his name, that he would leave them in other persons name or have someone else register them for him. Stated there was a beige Nissan Altima, two roll backs (Car haulers), backhoes and other vehicles were currently being maintained at the residence, as well as a semi tractor that was pulled into the bar behind the residence. The CRS stated there were duffle bags containing processed marijuana inside the sleeper of the semi tractor. The CRS stated this observation and detection had occurred within the last 24 hours.

The CRS stated that Floyd Likins was at the location and was acting as a guard on the marijuana in the barn. The CRS stated that he would sleep in the barn and would have weapons there to protect the marijuana.

The CRS stated the smell of processed and green marijuana was known to the CRS, that the CRS had been around processed marijuana and had previously smelled it before. The CRS stated that nothing else smelled like processed or green marijuana and the CRS had no doubt that there was processed marijuana inside the semi tractor., The CRS stated the semi tractor was either a Kenworth or Peterbilt. The CRS further stated the tractor had been obtained in El Paso, Texas.

The CRS stated that several people were involved in the distribution of marijuana with the Likins. Stated a person by the name of William (Bill) Stuber, also from Corbin, Kentucky would sometimes pick up the marijuana in the Caneyville area and transport it to the Corbin area. Stated that Stuber had previously been arrested in the Texas area over drugs.

The CRS advised the residence was located out of Caneyville, Ky. Stated you would take Exit 94 on the Western Kentucky Parkway, take a right on KY 79, travel to the stop sign and take a right on Ky 185 and go about 2 miles. Stated you would then turn left onto Ky 2766 and travel about 2—2½ to the top of a hill. Stated there was an old store across the road from the driveway to Likins house.

After receiving this information from Special Agent Neher and the confidential source, Edwards began his own investigation of Phillip Likins. In addition to checking various records, Edwards directed members of the Hardin County Narcotics Task Force to undertake surveillance of Likins residence. Edwards's affidavit further states:

Acting on the information received, affiant conducted the following independent investigation:

Affiant conducted a driver's license check on the individuals listed. Records showed that Phillip Likins, Beverly Likins and Floyd T. Likins had all been issued drivers license in Whitley County, Kentucky. A vehicle records check also showed no vehicles registered to Phillip Likins in either Whitley or Grayson County.

A vehicle check for Beverly Likins showed she did have a vehicle registered to her that gave a PO Box in Caneyville, Kentucky.

A criminal history check revealed that Phillip Likins had been arrested in 1996 for Possession of Marijuana in 1996 and a weapons charge. No additional narcotic related offenses were found. No drug related offenses were found on Beverly or Floyd Likins.

A driver's license check showed that William Stuber was also from the Corbin area and that he had been arrested in El Paso, Texas. His history showed he had been convicted or pled guilty to Possession with Intent to distribute 50 pounds of marijuana in June 2000.

Affiant had members of the Narcotics Task Force go to the area where the suspect's [*sic*] were to live. The residence and structures were located where the CRS had advised and the layout was as stated by the CRS. No semi tractor was visible in the barn, however there is material covering some of the visible entrances to the barn. This material could block the view into the barn, which would facilitate the verification of the semi tractor being inside.

While conducting surveillance on the location, Det. Bart Glenn advised affiant that a beige Nissan Altima had departed the residence operated by a white female. Det. Glenn advised the plate on the car was Kentucky registration 080–CGB. This vehicle was found to be registered to Jeff Lewis of Woodbine, Kentucky.

This individual had been stated by the CRS to be a worker for Phillip Likins in the marijuana distribution business. No criminal history could be located on this individual and the CRS advised that the CRS possessed no knowledge that Lewis had ever been arrested, that he was mostly a peripheral player in the business.

Based upon Edwards's affidavit, the district judge in Grayson County, Kentucky, issued a warrant to search Likins's property.

The district court noted that the affidavit did not provide specific information as to why the officer believed the informant was reliable. Further, the district court determined that the affidavit did not unequivocally indicate that the informant's information came from firsthand observation. Nonetheless, the district court concluded that because the affidavit provided a great level of detail and specifics describing the exact location and packaging of the marijuana, the names of other participants, the location from which the marijuana was obtained and the names of other participants that the independent corroboration substantiated the information provided by the informant and thereby bolstered his reliability. Based upon the totality of the circumstances, the district court concluded that the affidavit contained sufficient probable cause to justify the issuance of a search warrant. The district court therefore denied the motion to suppress.

## II.

This Court reviews the findings of fact made by a district court in a suppression hearing for clear error, while the district court's conclusions of law, as to the existence of probable cause, are reviewed *de novo*. *United States v. Pennington*, 328 F.3d 215, 216–17 (6th Cir.2003). In this case, however, there are no factual disputes resolved by the district court. Instead, Likins contends that the affidavit is legally inadequate to support a finding of probable cause sufficient to permit the search of his property.

Likins essentially contends that the affidavit contains no information upon which the reliability of the confidential informant may be assessed. In addition, Likins contends that the details given by the informant involve only innocent facts or matters, the corroboration of which may not provide a sufficient basis for probable cause.

As the Supreme Court has explained in *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983):

> The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him [*sic*], including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of crime will be found in a particular place.

As explained by this Court in *United States v. Smith*, 182 F.3d 473, 477 (6th Cir.1999), the value of an informant's information is based upon three factors, the first concerning the veracity of the informant, and the second involves past reliability. The third factor involves an analysis of the basis of knowledge upon which the

informant's tip is made. As explained in *Smith,* the three factors

... should be understood as "closely intertwined issues that may usefully illuminate the commonsense, practical question" of whether an informant's tip establishes probable cause.... Therefore, under a "totality of the circumstances" approach, a deficiency in one of these areas "may be compensated for, in determining the overall reliability of an [informant's] tip, by a strong showing as to the other, or by some other indica of reliability."

*Id. (citing Gates,* 462 U.S. at 230, 233, 103 S.Ct. 2317).

As further explained in *Smith,* when a confidential informant has no asserted, proven track record for providing reliable information, subsequent corroboration of the details provided by the informant affords a means of assessing the reliability of the tip, even if the informant is wholly unknown to law enforcement. *Id.* at 479. As we held in *United States v. Weaver,* 99 F.3d 1372, 1376 (6th Cir.1996), the issuing judicial officer must have sufficient information to allow for an independent determination of probable cause. As the Supreme Court noted in *Gates,* the "action cannot be a mere ratification of the bare conclusions of others." 462 U.S. at 239, 103 S.Ct. 2317.

In addition to analyzing an informant's veracity and reliability, the Court must also consider the source's basis of knowledge. In *Spinelli v. United States,* 393 U.S. 410, 416, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), *abrogated on other grounds, Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), the Supreme Court noted, "[i]n the absence of a statement detailing the manner in which the information was gathered, it is especially important that the tip describe the accused's criminal activity in sufficient detail that

the magistrate may know that he [*sic*] is relying on something more substantial than a casual rumor circulating in the underworld or an accusation based merely on an individual's general reputation." The issuing judicial officer must evaluate the method by which an informant came by the information forming the basis of an application for a search warrant. *Smith,* 182 F.3d at 478. As with the issues of reliability and veracity, however, the more detail an informant may provide, the better the basis of knowledge upon which a judicial officer may rely.

Applying these principles to the case at hand, the Court first notes that the affiant's description of the informant as reliable is of no moment without sufficient, detailed explanation. *United States v. Allen,* 211 F.3d 970, 975 (6th Cir.2000). The affidavit simply describes the informant as a "confidential reliable source" and otherwise provides no detail as to the affiant's estimation of the informant's veracity or the reliability of information previously given to law enforcement by the informant. Consequently, the affidavit may provide probable cause for a search of Likins's property only if it contains sufficient corroboration upon which an issuing judge may conclude, given all the circumstances set forth in the affidavit, that there is a reasonable grounds for belief that contraband or evidence of a crime will be found at the premises to be searched.

The informant described Phillip Likins as a distributor of marijuana who transported quantities of the substance from El Paso, Texas to Kentucky, where the marijuana would be distributed. The informant stated that Likins and his wife, Beverly Likins, were originally from Corbin, Kentucky and had moved to Grayson County, near Kaneyville, Kentucky approximately one year previously. The informant also described Floyd Likins,

brother of Phillip Likins, as staying at the residence in Grayson County.

The informant also claimed that Phillip Likins did not title vehicles in his name. The informant indicated that a beige Nissan Altima was parked at Likins's residence together with two car haulers, backhoes and a semi-tractor trailer which was pulled into a barn behind the residence. The informant indicated that there were duffel bags containing processed marijuana inside the trailer's sleeper. The informant also stated that Floyd Likins slept in the barn in order to guard the marijuana. The informant indicated that he had smelled processed marijuana in the past and that the informant had no doubt that processed marijuana was inside the trailer.

The informant identified a William Stuber, also from Corbin, Kentucky, who was described as picking up marijuana in the Caneyville area and transporting it to Corbin, Kentucky. The informant also stated that Stuber had been arrested in Texas on drug charges. Finally, the informant gave a specific location of the residence and various adjacent buildings maintained by Phillip Likin.

As a result of an investigation by narcotics officers, together with on-site surveillance, the following information was developed by law enforcement authorities and set forth in the affidavit in support of the search warrant. Phillip, Beverly and Floyd Likins had all been issued drivers licenses in Whitley County, Kentucky in which the town of Corbin is located. No motor vehicles were registered to Phillip Likins in either Whitley or Grayson County. Phillip Likins had been arrested in 1996 for possession of marijuana. William Stuber was also from the Corbin area and was arrested in El Paso, Texas for intention to distribute fifty pounds of marijuana in June of 2000.

From surveillance of the property in question, members of the Narcotics Task Force observed the residence and structures as described by the informant. Although they were not able to view a semi-tractor in the barn, they did observe material covering the entrances to the barn which prevented observation of vehicles within the structure. The officers also observed the beige Nissan Altima leaving the residence. The vehicle was registered to a Jeff Lewis of Woodbine, Kentucky. While Lewis was not originally described by the informant prior to surveillance at the premises, the affidavit indicates that the informant described Lewis as a peripheral player in the marijuana distribution business.

Initially, the Court notes that a fair reading of the affidavit reveals that the informant smelled the marijuana inside the semi-tractor, which he described as located in a barn behind Likins's residence. From this, the issuing judicial officer could have reasonably concluded that the informant had actually been on the premises, at least near the tractor trailer, and had smelled processed marijuana. As this Court has held, "... if a CI [confidential informant] saw guns, he is not required to explain how he knew what a gun looks like." *Allen*, 211 F.3d at 975. In this case, the informant stated, "... [N]othing else smelled like processed or green marijuana and the CRS [informant] had no doubt that there was processed marijuana inside the semi tractor."

Taken together, the various bits of information given by the informant to law enforcement officials were corroborated as to a number of important details. The informant made a connection between the defendant and El Paso, Texas, which was confirmed through court records indicating that Likins and Stuber had in fact been arrested in either El Paso, in Likins's case,

or Texas, in Stuber's case for drug trafficking. As the informant also indicated, no vehicles at the property were registered to Likins. Finally, otherwise innocent details, such as the layout of the property and the location of various vehicles, were confirmed through surveillance conducted by narcotics agents.

Likins contends that mere corroboration of otherwise innocent facts is not sufficient to establish the reliability, credibility and basis of knowledge as to information provided by an informant. Regardless of whether this proposition is true in the abstract, not all of the details provided by the informant which were later corroborated are so innocent. The informant established a connection between Likins and El Paso, Texas, where he had been involved in drug trafficking charges. The informant also identified Stuber, who also had a connection to Texas regarding illegal drug trafficking. Further, the informant noted that Likins did not want to have motor vehicles licensed in his name because it would then make the vehicles traceable back to him in the event such vehicles were involved in drug trafficking. Further, the beige Nissan vehicle found at the Likins property was not registered to Likins but to another party identified by the informant as a co-conspirator in marijuana trafficking.

Moreover, the Supreme Court rejected the premise of Likins's argument in *Illinois v. Gates,* in which it held:

[P]robable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity. By hypothesis, therefore innocent behavior frequently will provide the basis for a showing of probable cause; to require otherwise would be to *sub silentio* impose a drastically more rigorous definition of probable cause than the security of our citizens demands ... In making a determination of probable cause the relevant inquiry is not whether particular conduct is "innocent" or "guilty," but the degree of suspicion that attaches to particular types of non-criminal acts.

*Gates,* 462 U.S. at 245 n. 13, 103 S.Ct. 2317 (citation omitted).

Based upon the foregoing, this Court affirms the decision of the district court denying Likins's Motion to Suppress.[1]

### III.

Likins also challenges the district court's imposition of a sentencing enhancement under U.S.S.G. § 2D1.1(b)(1)[2] This section provides a two-level enhancement if a defendant possessed a dangerous weapon during a drug trafficking offense. In addition, Likins contends that the district court also erred in finding under U.S.S.G. § 5C1.2(a)(2)[3] that he possessed a firearm

---

**1.** Likins has also raised before this Court an argument that Detective Edward was without legal authority, under Kentucky law, to obtain and execute a search warrant outside of his jurisdictional authority. Likins raises this argument in the alternative, in the event this Court found that the affidavit was issued in the absence of probable cause and proceeded to consider whether the good faith exception established in *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984) should apply in this case. This Court initially notes that, having found probable cause to support the issuance of the search warrant,

the issue of *Leon* is no longer before this Court. More importantly, however, is the fact that Likins did not raise this issue in the district court and may not raise the issue for the first time on appeal. *United States v. Sheppard,* 149 F.3d 458, 461 (6th Cir.1998).

**2.** U.S.S.G. § 2D1.1(b)(1) states: "If a dangerous weapon (including a firearm) was possessed, increase by 2 levels."

**3.** U.S.S.G. § 5C1.2(a)(2) states: "the defendant did not use violence or credible threats of violence or possess a firearm or other dan-

during a drug trafficking offense, thereby rendering him ineligible for safety valve treatment.

Likins also contends that the district court improperly analyzed the fifth element involved in the safety valve determination which requires that the defendant truthfully provide the government all information and evidence concerning the offense that were part of the same course or conduct. The Court will address these issues *seriatim.*

### A. U.S.S.G. § 2D1.1(b)(1)

■ This Court reviews a district court's factual finding that the defendant possessed a firearm during a drug trafficking offense for clear error. *United States v. Saikaly*, 207 F.3d 363, 367 (6th Cir. 2000). In the commentary of 2D1.1(b)(1), at note 3, it is noted that the firearm enhancement "should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." As this Court held in *United States v. Sanchez*, 928 F.2d 1450, 1460 (6th Cir.1991), the government must establish that the defendant actually or constructively possessed a weapon, and that such possession occurred during the commission of the offense. Upon such showing, the enhancement shall be imposed, unless the defendant establishes that it was "clearly improbable" that the weapon was connected to the crime. *Id.*

In this case, Likins contends that there was no connection between the firearms found in his house and the offense of drug trafficking. The district court, however, concluded that $62,000 of drug money was found inside the house together with 21 bags of marijuana within the same dwelling. One gun was found in the same room

as the cash, while other guns were found scattered throughout the house. The house was owned by Likins. Contrary to Likins's assertion, it is the government's burden to prove only constructive or actual possession of the firearms at the time the drug offense was committed. Both of these facts are clear from the record. The burden then is upon the defendant to prove that it was "clearly improbable" that the weapons were connected to the crime. The district court found that it was not clearly improbable that the guns were connected to drug distribution.

This Court finds that the decision of the district court is imposing a two-level enhancement under U.S.S.G. § 2D1.1(b)(1) was not clear error.

### B. Safety Valve Application

■ This Court reviews a district court's refusal to apply U.S.S.G. § 5C1.2, the safety valve, as subject to a clear error review. *United States v. Adu*, 82 F.3d 119, 124 (6th Cir.1996). Likins contends that the district court improperly relied upon the standard of "clearly improbable" applicable to U.S.S.G. § 2D1.1(b)(1) but not § 5C1.2(a)(2). This Court initially notes that Likins failed to raise this issue in the district court and must therefore establish plain error. *United States v. Clinton*, 338 F.3d 483, 487 (6th Cir.2003).

The district court considered § 5C1.2(a)(2), which renders a defendant ineligible for the benefit of the safety valve if he or she possessed a firearm in connection with the offense. A number of courts have held that once a defendant receives the enhancement for possession of a firearm under § 2D1.1(b)(1), such a conclusion "necessarily defeats application of the safety valve." [4] *United States v. Smith*, 175

---

gerous weapon (or induce another participant to do so) in connection with the offense."

**4.** The issue is more complex in situations involving possession of a firearm by a co-con-

F.3d 1147, 1149 (9th Cir.1999) (*citing United States v. Vasquez*, 161 F.3d 909, 911–12 (5th Cir.1998)); *see United States v. Hallum*, 103 F.3d 87, 89 (10th Cir.1996); *United States v. Burke*, 91 F.3d 1052, 1053 (8th Cir.1996); *cf. United States v. Nelson*, 222 F.3d 545, 549–51 (9th Cir.2000). This Court recently addressed the issue, in passing, in *United States v. Johnson*, 344 F.3d 562 (6th Cir.2003), holding that the imposition of a two-level enhancement under 2D1.1(b)(1) precludes application of the safety valve.

We therefore conclude that the district court did not engage in plain error by refusing to apply the safety valve in favor of Likins, since it had imposed the enhancement for possession of a firearm during a drug trafficking offense under § 2D1.1(b)(1). Because a defendant must meet all of the five criteria for safety valve treatment under § 5C1.2, the conclusion by this Court that the defendant did not meet 5C1.2(a)(2) renders moot Likins's further argument that the district court erroneously determined that he had not satisfied 5C1.2(a)(5).

Based upon the foregoing, this Court concludes that the district court's refusal to apply the safety valve to the defendant was not plain error.

## IV.

The decision of the district court denying Likins's Motion to Suppress is AFFIRMED. Further, the district court's decision to apply the gun enhancement under § 2D1.1(b)(1) and not to apply the

spirator. Section 2D1.1(b)(1) applies to a co-conspirator who did not personally possess a firearm, since the guideline encompasses all reasonably foreseeable acts of the conspiracy under Section 1B1.3(a)(1)(B). In contrast, Section 5C1.2(2) involves only the defendant's actual conduct. *United States v. Figueroa-Encarnacion*, 343 F.3d 23 (1st Cir.2003);

safety valve under § 5C1.2(a)(2) is also AFFIRMED.

*United States v. Pena–Sarabia*, 297 F.3d 983, 989 (10th Cir.2002); *United States v. Clavijo*, 165 F.3d 1341, 1343–44 (11th Cir.1999); *United States v. Wilson*, 114 F.3d 429, 432 (4th Cir.1997); *United States v. Wilson*, 105 F.3d 219, 222 (5th Cir.1997). In this case, Likins received the enhancement solely upon his own conduct.