UNITED STATES of America,
Plaintiff–Appellee,

v.

Ronald R. HIGHSMITH, Defendant–
Appellant.

No. 01–5866.

United States Court of Appeals,
Sixth Circuit.

Jan. 16, 2003.

Before BATCHELDER and MOORE,
Circuit Judges; and FORESTER,*
District Judge.

* The Honorable Karl S. Forester, United States    Chief District Judge, Eastern District of Ken-

BATCHELDER, Circuit Judge.

Ronald Highsmith ("Highsmith") pleaded guilty to manufacturing at least 100 marijuana plants in violation of 21 U.S.C. § 841(a)(1), and to being a felon in possession of firearms in violation of 18 U.S.C. § 922(g). He now appeals, arguing that the district court erred by finding that he qualified for the USSG § 2D1.1(b)(1) enhancement, by holding that the USSG § 2D1.1(b)(1) enhancement precluded the application of the "safety valve" provision of USSG § 5C1.2, and by refusing to grant him a downward departure. Finding no merit to his claims, we affirm.

## Statement of Facts

According to the agreed factual basis in this case,

> [on] August 4, 1999, a Hawkins County [Tennessee] Marijuana Eradication Helicopter was working on a routine marijuana eradication operation when the pilot observed a patch of marijuana located near the Hawkins and Hancock county lines. The ground crew located several marijuana plants growing in the area around defendant Highsmith's residence, secured the area, and obtained a state search warrant.
>
> During execution of the search warrant at defendant's residence, agents found several mason jars full of marijuana, three paper bags that contained stems and leaves, a trash bag full of stems, marijuana sifting screens, scales and other assorted paraphernalia. A .38 revolver was found in the kitchen cabinet and a shotgun and rifle were found in the livingroom. Also found in the residence was another rifle and another pistol. Meanwhile, agents searching the property discovered 35 separate areas where 115 marijuana plants were growing in pots or planted in the ground. Most of the marijuana plants were scattered around the property in close proximity to the house. Twenty-five marijuana plants growing in pots were located in a fenced in area where agents also found a bag of miracle grow. These plants had just been watered.

Joint Appendix at 27–28.

At the sentencing hearing an agent who had searched Highsmith's house testified that he found the .38 revolver in the kitchen cabinet near a wooden plate that held some marijuana. Highsmith testified that he had bought the .38 (which was loaded, but was holsterless and was kept in its case) at a flea market for his wife because threatening people had come onto their property from time to time and they had been robbed, and that he had never brandished the gun, nor had he used it to protect his marijuana crop. His wife corroborated his testimony.

## Analysis

I. Whether the District Court Erred in Applying the USSG § 2D1.1(b)(1) Enhancement for Possessing a Dangerous Weapon

"A district court's finding that a defendant possessed a firearm during a drug crime is a factual finding subject to the clearly erroneous standard of review." *United States v. Elder,* 90 F.3d 1110, 1133 (6th Cir.1996) (citations omitted). USSG § 2D1.1(b)(1) provides that the base offense level of a defendant convicted of a drug offense should be increased two levels "[i]f a dangerous weapon (including a firearm) was possessed." This enhancement applies "if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense. For example, the enhancement would not be applied if the defendant, arrested at his

tucky, sitting by designation.

residence, had an unloaded hunting rifle in the closet." USSG § 2D1.1, cmt. n. 3. Once the government has established that the defendant "possessed" the gun during the commission of the offense, a presumption arises that the weapon was connected to the offense, and the defendant may overcome this only by showing that it was clearly improbable that the weapon was connected with the offense. *United States v. Sanchez,* 928 F.2d 1450, 1460 (6th Cir. 1991).

■ The district judge made it plain that he did not want to apply the § 2D1.1(b)(1) enhancement for the .38 pistol, but that he was not able to conclude that it was clearly improbable that the gun was connected with the marijuana offense. We sympathize with the judge's view that there are a number of factors that indicate that the possession of the .38 pistol was connected with things other than the drug offense. But we conclude that he did not clearly err in his ultimate conclusion that Highsmith did not carry his burden of demonstrating that it was clearly improbable that the gun was *also* connected with the marijuana offense. The weapon was a pistol, it was loaded, it was accessible, and it was next to some marijuana. *See United States v. Zimmer,* 14 F.3d 286, 290–91 (6th Cir.1994) (finding a connection improbable where the drugs were hidden in the basement, the gun was a hunting rifle that was stored upstairs in the bathroom, and the defendant had shot a deer from the bathroom window the day before the drugs were seized and had been fined for poaching). We therefore hold that this assignment of error is without merit.

## II. Whether the District Court Erred in Refusing to Apply the 18 U.S.C. § 3553(f) Safety Valve

Though the district court found that Highsmith's guideline range was 21 to 27 months, it sentenced him to five years in prison under the statutory mandatory minimum sentence required under 21 U.S.C. § 841(b)(1)(B), for 100 or more marijuana plants. The court had to apply the mandatory minimum unless all five factors in the "safety valve" provision of 18 U.S.C. § 3553(f), as incorporated in USSG § 5C1.2, applied. In the present case, the only thing between Highsmith and this safety valve was the second factor: "the defendant did not ... possess a firearm or other dangerous weapon ... in connection with the offense[.]" 18 U.S.C. § 3553(f)(2); USSG § 5C1.2(a)(2). It was Highsmith's burden to prove by a preponderance of the evidence that he was entitled to this safety valve, and we may reverse the district court only if it clearly erred. *United States v. Salgado,* 250 F.3d 438, 459 (6th Cir.2001).

■ Highsmith argues that he is entitled to this reduction even if he qualifies for the USSG § 2D1.1(b)(1) enhancement, because the latter provision requires only "possession," but this provision requires possession *"in connection with the offense."* 18 U.S.C. § 3553(f)(2); USSG § 5C1.2(a)(2) (emphasis added). Nevertheless, in *United States v. Stewart,* 306 F.3d 295 (6th Cir.2002), we agreed with those cases that have held that "where a defendant had actual or constructive possession over a firearm such that an increase to his or her base offense level under § 2D1.1 is appropriate, such possession defeats application of the safety valve." *Id.* at 327 (citation and quotation marks omitted). We conclude that because Highsmith's challenge to his USSG § 2D1.1(b)(1) enhancement fails, his safety valve claim also must fail.

## III. Whether the District Court Erred in Refusing a Downward Departure

■ The district court's refusal to depart is not appealable, unless the court

erroneously believed that it lacked authority to do so. *Salgado*, 250 F.3d at 460. In this case the court *correctly* believed that it lacked authority to depart downward: it had held that the 18 U.S.C. § 3553(f) safety valve did not apply, and the government had not filed a motion for a downward departure under 18 U.S.C. § 3553(e). *See United States v. Burke*, 237 F.3d 741, 743 (6th Cir.2001) (noting that the only means to depart below a statutory minimum are §§ 3553(e) and (f)). Consequently, we may not consider Highsmith's challenge.

## Conclusion

We affirm the judgment of the district court.