*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2004 FED App. 0028P (6th Cir.)
File Name: 04a0028p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

UNITED STATES OF AMERICA,
    *Plaintiff-Appellee,*

v.                          No. 02-6168

JOSEPH F. BOLKA, III,
    *Defendant-Appellant.*

---

Appeal from the United States District Court
for the Western District of Tennessee at Memphis.
No. 02-20069—Samuel H. Mays, Jr., District Judge.

Argued: December 5, 2003

Decided and Filed: January 22, 2004

Before: KENNEDY, MARTIN, and MOORE, Circuit
Judges.

---

## COUNSEL

**ARGUED:** Eugene A. Laurenzi, GODWIN, MORRIS, LAURENZI & BLOOMFIELD, Memphis, Tennessee, for Appellant. Thomas A. Colthurst, ASSISTANT UNITED STATES ATTORNEY, Memphis, Tennessee, for Appellee. **ON BRIEF:** Eugene A. Laurenzi, GODWIN, MORRIS, LAURENZI & BLOOMFIELD, Memphis, Tennessee, for

Appellant. Thomas A. Colthurst, ASSISTANT UNITED STATES ATTORNEY, Memphis, Tennessee, for Appellee.

---

## OPINION

---

KENNEDY, Circuit Judge. Defendant Joseph F. Bolka, III pleaded guilty to five counts of possession of methamphetamine with the intent to distribute and distribution and one count of manufacturing methamphetamine in violation of 21 U.S.C. § 841(a)(1). Defendant now appeals the district court's denial of his motion for a sentencing reduction under the "safety valve" provision of the United States Sentencing Guidelines ("U.S.S.G.") § 5C1.2(a). For the reasons explained below, we AFFIRM the judgment and defendant's sentence.

## I. Background

Pursuant to a plea agreement, defendant Bolka pleaded guilty to multiple violations of 21 U.S.C. § 841(a)(1). At the sentencing hearing, the district court adopted the Pre-sentence Investigation Report's calculations under the 2001 edition of the United States Sentencing Guidelines. In particular, the district court found that U.S.S.G. § 2D1.1(b)(1) applied so as to increase defendant's base offense level by two increments. Section 2D1.1(b)(1) provides for such an enhancement "[i]f a dangerous weapon (including a firearm) was possessed." Defendant, conceding such possession, had withdrawn his objection to this sentence enhancement.

Yet, before sentencing, defendant had filed a motion for a downward departure under the "safety valve" provision of U.S.S.G. § 5C1.2(a). Section 5C1.2(a) permits the court to "impose a sentence in accordance with the applicable guidelines . . . [regardless] of any statutory minimum sentence" if the court finds that the defendant meets" the

criteria of 18 U.S.C. § 3553(f).[1]  As one of those criteria, § 5C1.2(a)(2) mandates that the "defendant did not . . . possess a firearm . . . in connection with the offense."  In his motion and at the sentencing hearing, defendant argued that there was no evidence demonstrating that he had possessed the firearms in connection with his drug offenses.[2]  The district court denied defendant's motion for a "safety valve" reduction under § 5C1.2(a).  In finding defendant ineligible for that reduction, the district court construed this Court's opinion in *United States v. Stewart*, 306 F.3d 295 (6th Cir. 2002)*,* to hold that conduct that warrants a sentence enhancement under § 2D1.1(b)(1) necessarily precludes the application of a "safety valve" reduction under § 5C1.2(a). After applying all of the relevant factors,[3] the district court ultimately sentenced defendant to sixty months of imprisonment, followed by four years of supervised release, and a $600 special assessment.  Defendant appeals the district court's denial of his motion for a "safety valve" reduction under U.S.S.G. § 5C1.2(a).

---

[1] Additionally, U.S.S.G. § 2D1.1(b)(6) would afford a decrease in the defendant's base offense level by two increments if he were to satisfy § 5C1.2(a).

[2] To the extent that defendant's arguments, both below and on appeal, reference the use of a firearm–rather than the possession of a firearm–, we will treat those arguments as pertaining only to possession since, under § 5C1.2(a)'s express language, a defendant need only possess–not use–a firearm in connection with the offense to be ineligible for the "safety valve" reduction.  *Cf. United States v. Kincaide*, 145 F.3d 771, 784 (6th Cir. 1998) (holding that the prerequisite of possession under U.S.S.G. § 2D1.1(b)(1) does not require that one actually use or carry the weapon).

[3] The district court increased defendant's base offense level under U.S.S.G. § 2D1.1(b)(5)(C) upon finding that the offense involved the manufacture of methamphetamine and "created a substantial risk of harm to the life of a minor."  Yet, the court also decreased defendant's base offense level under U.S.S.G. § 5K1.1 because of defendant's assistance to the government.

---

## II. Analysis

We review a district court's interpretation of a sentencing guideline *de novo* and "a court's  factual determination of whether a . . . guideline applies in a particular case under a clearly erroneous standard."  *United States v. Adu*, 82 F.3d 119, 124 (6th Cir. 1996) (holding that we review a district court's refusal to apply U.S.S.G. § 5C1.2 for clear error because it is a factual finding).

In *United States v. Stewart*, 306 F.3d at 327 n.19, we held that a defendant, as the party seeking a "safety valve" reduction under § 5C1.2(a), has the burden of proving by a preponderance of the evidence that he is entitled to that downward departure.  *Accord United States v. Salgado*, 250 F.3d 438, 459 (6th Cir. 2001); *Adu*, 82 F.3d at 124.  Thus, as one of the eligibility criteria for a "safety valve" reduction, a defendant must prove by a preponderance of the evidence that he "did not . . . possess a firearm . . . in connection with the offense."  U.S.S.G. § 5C1.2(a)(2).  In contrast, to enhance a sentence under § 2D1.1(b)(1), the government must first demonstrate by a preponderance of the evidence that the defendant possessed a firearm "during the commission of a drug-trafficking offense."  *United States v. Moses*, 289 F.3d 847, 850 (6th Cir. 2002) (treating "during the commission of" as "during the period [or time] of " the drug-trafficking offense).  If the government meets this burden, a presumption arises that such possession was *"*connected to the defendant's offense."  *Id.*  The defendant may rebut this presumption only by demonstrating "that it is *clearly improbable* that the . . . [firearm] was connected to the offense."  *Id.* (emphasis added) (specifying some of the factors in determining "whether a firearm was related to an offense, including the proximity of the firearm to the drugs, the type of firearm involved, whether the firearm was loaded, and any alternative purpose offered to explain the presence of the firearm").

In *Stewart*, this Court held that the district court did not clearly err in applying a § 2D1.1(b)(1) enhancement upon

finding that the defendant did not meet "his burden of showing that it was *clearly improbable* that the weapon was connected to his drug trafficking offense." 306 F.3d at 327 (emphasis added). After noting that the district court considered the applicability of § 5C1.2(a) separately from that of § 2D1.1(b)(1), we then held that the court "did not clearly err in finding that . . . [the defendant] failed to show by a *preponderance of the evidence* that he was eligible for" § 5C1.2(a)'s "safety valve" reduction. *Id.* at 327 n.19 (emphasis added). Without expressly holding so, we observed that "[e]very circuit thus far that has considered the issue has held that[,] where a defendant had . . . possession over a firearm such that an increase to his or her base offense level under § 2D1.1 is appropriate, such possession 'defeats [the] application of the safety valve.'" *Id.* (quoting *United States v. Smith*, 175 F.3d 1147, 1149 (9th Cir. 1999)).[4] Relying upon this statement, the district court construed *Stewart* to hold that conduct that warrants a § 2D1.1(b)(1) enhancement *necessarily* bars a § 5C1.2(a) "safety valve" reduction. We note that this interpretation of *Stewart* is unwarranted because the statement upon which that interpretation relies does not expressly ratify this underlying *per se* proposition but, rather, simply recognizes its existence. We expressly disclaim the proposition that conduct

---

[4]Conceding that "*Smith might* be read as a per se rule . . . [that] forecloses the safety valve any time a § 2D1.1(b)(1) enhancement has been imposed[,]" the Ninth Circuit subsequently limited *Smith*'s reach to the particular conduct involved in that case. *United States v. Nelson*, 222 F.3d 545, 550 (9th Cir. 2000). According to the court, *Smith* did not address the "separate and distinct burdens of proof for § 2D1.1(b)(1) and § 5C1.2." *Id.* The court noted that, although conduct that will support a finding under §§ 2D1.1(b)(1) and 5C1.2 *may* be the same, "the burden and quantum of proof . . . [under these sections] remain different." *Id.* at 551. The court then held that, "even where a defendant has already received a § 2D1.1(b)(1) enhancement, the defendant need only show his eligibility for [§ 5C1.2 "safety valve"] relief by a preponderance of the evidence." *Id.* at 551-52 (holding that the defendant, on remand, may show his eligibility for the "safety valve" reduction by a preponderance of the evidence even where a § 2D1.1(b)(1) enhancement applied).

---

warranting a § 2D1.1(b)(1) sentence enhancement *necessarily* forecloses the application of a § 5C1.2(a) "safety valve" reduction as this *per se* conclusion does not necessarily follow from the different evidentiary standards of §§ 2D1.1(b)(1) and 5C1.2(a)(2).[5]

---

[5]Moreover, we know of no binding published case or persuasive unpublished case from this circuit expressly adopting the proposition that a § 2D1.1(b)(1) sentence enhancement necessarily forecloses a § 5C1.2(a) "safety valve" reduction. *See United States v. Highsmith*, 60 Fed.Appx. 517, 519, 2003 WL 152324, at *2 (6th Cir. 2003) (unpublished opinion) (reading *Stewart* as adopting this *per se* bar); *United States v. Mitchell*, 63 Fed.Appx. 224, 2003 WL 21147956, at *4 (6th Cir. 2003) (unpublished opinion) (noting that the district court, after finding that the defendant possessed a firearm in connection with relevant conduct, "imposed the U.S.S.G. § 2D1.1(b)(1) enhancement, which effectively deprived . . . [the defendant] of the safety valve [reduction]"); *United States v. Bursey*, 215 F.3d 1327, 2000 WL 712377, at *4 (6th Cir. 2000) (unpublished opinion) (observing that "constructive or actual possession of a firearm will prevent application of the safety valve," but also recognizing that § 5C1.2(a)(2) pertains to possession "in connection with the offense"). For example, in *United States v. Johnson*, 344 F.3d 562, 564 (6th Cir. 2003), two co-defendants appealed their sentences for conspiracy to distribute methamphetamine on the grounds that the district court erred in applying § 2D1.1(b)(1) enhancements and in refusing to apply § 5C1.2(a) "safety valve" reductions. This Court held that, because § 2D1.1(b)(1) enhancements "properly applied to both defendants, both are ineligible for 'safety valve' status." *Id.* at 565. Admittedly, one could reasonably construe this language as implicitly holding that the proper application of a § 2D1.1(b)(1) enhancement automatically precludes the application of a § 5C1.2(a) reduction. However, we believe that this language is better understood as being limited to the particular facts of that case.

Defendant Johnson, a methamphetamine supplier, solely argued that the government had failed to discharge its duty of proving that he had possessed a firearm. *Id.* This Court held that the government had proven by a preponderance of the evidence that Johnson reasonably could have foreseen that a "co-conspirator would possess a firearm in the commission of the drug conspiracy." *Id.* This Court also held that the district court did not clearly err in applying a § 2D1.1(b)(1) enhancement to Johnson's sentence because he had presented *no* evidence that "it [wa]s clearly improbable that the weapon was connected to the offense." *Id.* (internal quotation marks omitted). Inherent in these holdings are the determinations that a preponderance of the evidence demonstrated Johnson's possession of a firearm and that Johnson produced *no*

The application of a § 2D1.1(b)(1) sentence enhancement does not necessarily preclude the application of a § 5C1.2(a) "safety valve" reduction. A defendant may be unable to prove that it is clearly probable that the firearm was not connected to the offense–the logical equivalent of showing that it is clearly improbable that the firearm was connected to

---

evidence–let alone a preponderance–that this possession was not connected to his offense. In affirming the § 2D1.1(b)(1) enhancement, we implicitly determined that Johnson had failed to prove by a preponderance of the evidence that he did not possess a firearm in connection with his offense, as § 5C1.2(a)(2) requires.

Defendant Stuut, a methamphetamine customer and drug-debt enforcer, conceded that, during the conspiracy, he had possessed a firearm, which he had bought and sold to his drug supplier; however, Stuut argued that this possession was not connected to his offense. *Id.* at 566-67. In support, Stuut claimed that he had sold the firearm to his drug supplier based upon the understanding that she needed it for self-protection and, consequently, that Stuut had not known that she intended to use the firearm to further the conspiracy. *Id.* at 566. After affirming that the government had discharged its *prima facie* duty, this Court then held that the district court did not clearly err in applying a § 2D1.1(b)(1) enhancement to Stuut's sentence because he failed to prove that it was "clearly improbable that the weapon was connected to the offense." *Id.* at 567. After recognizing that a district court's credibility determinations receive deference, this Court affirmed the district court's determination that, during the time of the drug conspiracy, Stuut had sold the firearm to his drug supplier, whom Stuut knew was engaged in illegal conduct and for whom Stuut occasionally kept drugs. *Id.* Implicit in this determination was the conclusion that the district court did not clearly err in deeming Stuut unworthy of credence and, thus, rejecting his self-serving allegation that he had believed that the firearm was for the supplier's personal protection rather than to advance the conspiracy. In essence, this Court affirmed the finding that the only evidence that Stuut proffered to prove that his possession was not connected with his offense was unworthy of credence and, thus, tantamount, to *no* evidence at all. Thus, we implicitly determined that Stuut had failed to prove by a preponderance of the evidence that his conceded possession of the firearm was not connected to his offense, as § 5C1.2(a)(2) mandates. In sum, the implicit determinations underlying the application of the § 2D1.1(b)(1) enhancements–not the application of those enhancements in and of themselves–precluded the application of the § 5C1.2(a) "safety valve" reductions to the sentences of both Johnson and Stuut.

the offense–so as to defeat a § 2D1.1(b)(1) enhancement. *See United States v. Johnson*, 344 F.3d 562, 567 (6th Cir. 2003) (referring to this standard in its logically equivalent form). However, that same defendant may, nevertheless, be able to prove by a preponderance of the evidence that the firearm was not connected to the offense so as to satisfy § 5C1.2(a)(2). The "clearly improbable" standard is a higher quantum of proof than that of the "preponderance of the evidence" standard. *See Moses*, 289 F.3d at 852 (construing a "preponderance of the evidence" as that which is "more likely than not"); *Johnson*, 344 F.3d at 567 (defining the "clearly improbable" § 2D1.1(b)(1) standard as a difficult one that entails more than showing the existence of a "possible innocent explanation" or a *mere probability* that the firearm was not connected to the offense). It does not deductively follow from a defendant's failure to satisfy a higher quantum of proof on a particular issue that he cannot satisfy a lower quantum of proof on that same issue. It also does not necessarily follow from the existence of a preponderance of evidence demonstrating that a defendant possessed a firearm *during the time of the offense*–the government's *prima facie* burden of proof–for purposes of a § 2D1.1(b)(1) enhancement that there exists a preponderance of evidence demonstrating such possession *in connection with the offense*—contrary to the defendant's burden of proof–so as to defeat a § 5C1.2(a) reduction. *See Moses*, 289 F.3d at 850. While they are quantitatively the same, these evidentiary standards are qualitatively distinct. Similarly, it does not deductively follow from the *presumption* that a defendant's possession of a firearm was connected to the offense–arising from a preponderance of evidence demonstrating such possession during the time of the offense–for purposes of a § 2D1.1(b)(1) enhancement that a preponderance of evidence demonstrating such a connection, in fact, exists for purposes of a § 5C1.2(a) reduction. Consequently, a defendant's conduct warranting a § 2D1.1(b)(1) enhancement does not *per se* preclude that defendant from proving by a preponderance of the evidence that his possession of the firearm was not connected with his offense for purposes of a § 5C1.2(a) "safety valve" reduction.

Even though the district court erred in finding that defendant's conduct warranting a § 2D1.1(b)(1) enhancement *necessarily* foreclosed the application of a § 5C1.2(a) "safety valve" reduction,[6] the court's refusal to apply such a reduction was harmless because defendant failed to discharge his duty of demonstrating his entitlement to it. Defendant failed to prove by a preponderance of the evidence that he did not possess a firearm in connection with his drug offenses. Defendant conceded that, during the period of his drug offenses, he possessed a semi-automatic pistol and two revolvers in his residence. First, defendant failed to demonstrate by a preponderance of the evidence that such possession was not connected to his offenses of possession with the intent to distribute and distribution of methamphetamine. Affirming the facts in the Pre-sentence Investigation Report, defendant, thus, conceded that, pursuant

---

[6]Given the inherent difficulty in reconciling such a *per se* proposition with the evidentiary standards of §§ 2D1.1(b)(1) and 5C1.2(a)(2), the district court's precise reasoning in denying defendant a "safety valve" reduction was, understandably, unclear. For example, in considering the application of the "safety valve" reduction, the district court first noted that defendant, while conceding his possession of the firearms, was claiming that this possession was not connected to his drug offenses. The court then stated that, under Sixth Circuit precedent, a determination of possession of a firearm "is automatically in connection with the offense." After, again, noting that defendant had admitted to the requisite possession, the district court opined that *Stewart* also "appears to be saying [that] the [c]ourt is bound by that determination in making its [§] 5C1.2 . . . (a)(2) determination." This reasoning may indicate that the district court believed, albeit incorrectly, that it could not find that defendant's possession of the firearms was not connected to his offenses so as to satisfy § 5C1.2(a)(2) where, for purposes of a § 2D1.1(b)(1) enhancement, its determination of possession had already given rise to a presumption of such a connection. In any event, as the record demonstrates, the district court never separately considered the applicability of §§ 2D1.1(b)(1) and 5C1.2(a)(2) to the particular conduct at issue based upon those provisions' distinct evidentiary standards. Rather, the district court, acting upon the erroneous belief that its application of a § 2D1.1(b)(1) enhancement *automatically* foreclosed its application of a § 5C1.2(a) reduction, treated such provisions as though they were intrinsically, mutually exclusive.

to a search of his residence, federal agents found the three firearms in defendant's bedroom along with methamphetamine and scales. Defendant never disproved that one of the revolvers was loaded and that ammunition for the other firearms was located in his residence. Defendant admitted that he sold methamphetamine at his residence on several occasions.

Second, defendant failed to demonstrate by a preponderance of the evidence that his possession of the firearms in his residence was not connected to his offense of manufacturing methamphetamine. Presumably to prove this lack of connection, defendant denied that he had manufactured the methamphetamine in his residence. Rather, defendant argued that he had manufactured the methamphetamine either in a barn or near a pond approximately 500 to 1000 feet from his residence. However, defendant conceded that he had used an acid gas generator to "smoke off" methamphetamine–part of the final stages of the manufacturing process–in the bathroom of his residence. *See United States v. Morrison*, 207 F.3d 962, 964 (7th Cir. 2000) (observing that, as part of the "methamphetamine production process, salt and sulfuric acid are mixed to produce hydrogen chloride gas, which is used to crystallize liquid methamphetamine"). Defendant also conceded that, on about one or two occasions, he mixed some of the chemicals that comprise methamphetamine on the porch of his residence. Defendant admitted that the agents found items relating to the manufacture of methamphetamine both inside and outside of defendant's residence. To the extent that defendant simply argues that there is a lack of evidence showing any connection between his possession of the firearms and his offenses, defendant both disregards the strong record evidence demonstrating otherwise and misplaces the burden of proof under § 5C1.2(a) upon the government. Additionally, to the extent that defendant, for the first time, asserts in his appellate brief that his possession of the firearms was for his personal protection, rather than for any purpose connected with his offenses, such an alternative explanation comes too late. *See*

Fed. R. App. P. 10(a)*; cf. United States v. Butler,* 207 F.3d 839, 849-50 (6th Cir. 2000) (holding that this Court's consideration of a new argument in support of a sentencing objection raised before the district court was proper where the additional argument entailed a question of pure law and, thus, did not deprive any party of the opportunity to offer relevant evidence). In sum, because defendant did not demonstrate his entitlement to a "safety valve" reduction under § 5C1.2(a), the district court's refusal to apply such a reduction on an erroneous ground was harmless.

For the foregoing reasons, we AFFIRM the judgment and defendant's sentence.