**NOT FOR PUBLICATION**
**File Name: 06a0365n.06**
**Filed: May 24, 2006**

**NO. 04-5301**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

UNITED STATES OF AMERICA

       Plaintiff-Appellee,

v.

WILLIAM DAVID MILLER,

       Defendant-Appellant.

_____/

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE EASTERN
DISTRICT OF KENTUCKY

**BEFORE:**    NORRIS, SUHRHEINRICH, and ROGERS, Circuit Judges.

      **SUHRHEINRICH, J.,** Defendant-Appellant William David Miller pleaded guilty to conspiring to manufacture, distribute, and possess with intent to distribute 1000 kilograms or more of marijuana, in violation of 21 U.S.C. § 846. The district court, rejecting Miller's motion for safety-valve relief, sentenced Miller to the mandatory minimum term of imprisonment of 120 months. Miller appeals his sentence. For the reasons that follow, we **VACATE** the sentence and **REMAND** for resentencing.

**I.**

      On April 24, 2003, Defendant William David Miller shot Michael Allen Hays in Odon, Indiana. Miller turned himself in to local law enforcement the following day. After waiving his *Miranda* rights, he admitted shooting Hays, saying that "[h]e had to do it, or they were going to kill

[him]."[1]  (Alterations in original.)  He further disclosed his and Hays' involvement in a marijuana production ring that he later admitted stretched from Wisconsin to Kentucky.

Authorities then began to investigate the marijuana operation and the disappearance of Russell Lee Marshall, a/k/a Tom Marshall, who was alleged to have been a participant in the marijuana operation.  The investigation revealed that on April 18, 2003, Hays and his wife, Trena Hays, traveled to Syracuse, New York for a horse-pulling competition.  When they returned two days later, Trena Hays discovered Marshall's body on their kitchen floor.  Hays then contacted Keith Brummett, Clifford Slusher, and Dean Heckathorn, all of whom were also involved in the marijuana operation.  Hays refused their pleas to report the death to law enforcement.  Instead, Hays and Slusher retrieved a trailer from Hays' farm to transport the body, while Trena Hays, Brummett, and Heckathorn wrapped the body in plastic.  Hays, Heckathorn, Slusher, and Brummett then placed the body in the trailer, and Hays and Slusher hauled the trailer to Slusher's nearby farm, where they buried Marshall's body.

Following this investigation, Miller, Hays, Trena Hays, and Brummett, among others, were indicted on various counts of a twelve-count indictment that included charges relating to the marijuana operation and death of Russell Marshall.  Several other co-conspirators were charged in separate indictments.  Miller was indicted under Count 2 for conspiring to manufacture, distribute, and possess with intent to distribute 1000 kilograms or more of marijuana, in violation of 21 U.S.C. § 846, and under Count 3 for conspiring and attempting to conduct financial transactions affecting interstate commerce from the proceeds of the manufacture, sale, and distribution of a controlled

---

[1]At the time of sentencing, Miller was awaiting trial in Indiana state court for attempted murder.  Counsel revealed at oral argument that a jury has since found Miller not guilty.

substance, in violation of 18 U.S.C. § 1956(h).

Miller pleaded guilty to Count 2 in exchange for the government's dismissal of Count 3. (J.A. 99.) He stipulated that the amount of marijuana at issue was between 4000 and 7000 plants, or between 400 and 700 kilograms. A violation of 21 U.S.C. § 846 involving 400 kilograms or more of marijuana carries a minimum ten-year sentence. *See* 21 U.S.C. § 841(b)(1)(A)(vi). However, both parties agreed that Miller's sentence would be lower should he qualify for safety-valve consideration.[2]

In addition, Miller agreed to "cooperate fully with the United States in the investigation and prosecution of the matters in the Indictment and all related matters, including testifying in all proceedings."

At sentencing, Miller sought a safety-valve reduction. The government objected, arguing that Miller did not qualify because he failed to provide all information and evidence he had concerning the offense and other offenses part of the same course of conduct. Following argument, the district court found that Miller did not qualify for the safety valve.[3] Accordingly, the district court sentenced Miller to the mandatory minimum term of imprisonment of 120 months.[4] The court also required that he pay a mandatory special assessment of $100, and that his imprisonment be

---

[2]A defendant who qualifies for the "safety-valve" provision referenced in U.S. Sentencing Guideline Manual § 2D1.1(b)(6) (2003) [hereinafter, "U.S.S.G."] is entitled to a 2-level reduction in the calculation of his sentence and is excluded from an otherwise-applicable statutory minimum. *See* 18 U.S.C. § 3553(f); U.S.S.G. § 5C1.2(a). The defendant must meet all five conditions of U.S.S.G. § 5C1.2(a) in order to qualify.

[3]The court also denied Miller's motion for downward departure based on his poor physical condition. Miller has not challenged that ruling on appeal.

[4]In the absence of the mandatory minimum, the Guidelines range would have been 57 to 71 months.

followed by five years of supervised release. Miller timely appealed his sentence.

## II.

The sole issue on appeal is whether the district court erred in denying Miller the safety-valve reduction. The defendant bears the burden of proving by a preponderance of the evidence that he is eligible for safety-valve consideration. *United States v. Bolka*, 355 F.3d 909, 912 (6th Cir. 2004). A district court's refusal to grant safety-valve relief is a factual finding that this Court reviews for clear error. *United States v. Adu*, 82 F.3d 119, 124 (6th Cir. 1996). A factual finding is clearly erroneous if "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. Navarro-Camacho*, 186 F.3d 701, 705 (6th Cir. 1999). We review the evidence "'in a light most likely to support the district court's decision.'" *United States v. Bragg*, 23 F.3d 1047, 1049 (6th Cir. 1994) (quoting *United States v. Gomez*, 846 F.2d 557, 560 (9th Cir. 1988)).

Miller argues that the district court erred in finding that he did not satisfy U.S.S.G. § 5C1.2(a)(5),[5] which provides:

> not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan, but the fact that the defendant has no relevant or useful other information to provide or that the Government is already aware of the information shall not preclude a determination by the court that the defendant has complied with this requirement.

The district court found that Miller had failed to disclose two facts relating to Marshall's death. The first was that on the weekend of Marshall's death, Miller was scheduled to go to Syracuse, New York for the horse-pulling competition but backed out at the last minute. The second

---

[5]The district court found that Miller had satisfied the other four statutory requirements.

-4-

was that Miller was with Hays and Michael Griffin a few days after Marshall's death. Hays and Griffin then left, and Hays directed Griffin to get rid of Marshall's truck. The truck was later found destroyed.

Miller argues that the district court's factual findings were based on insufficient evidence. In the alternative, he argues that the facts found were not "relevant" to his offense or course of conduct. While we cannot say that the district court clearly erred in finding that Miller did not disclose his cancelled trip to Syracuse and his meeting with Hays and Griffin shortly before the other two left to destroy Marshall's truck, we nonetheless conclude that the district court clearly erred in concluding that those facts were "relevant."

To qualify for safety-valve relief, a defendant must disclose all facts that are "relevant" to the offense of conviction. *See Adu*, 82 F.3d at 124 ("To qualify under § 5C1.2, . . . a defendant must truthfully provide all information he has concerning the offense of conviction *and all relevant conduct*.").

Defendants seeking the safety valve are required to disclose more than the mere elements or facts of the offense of conviction, which is the requirement for an acceptance of responsibility reduction under U.S.S.G. § 3E1.1.[6] *Id.* Rather, § 5C1.2 requires complete disclosure of all information the defendant has concerning all relevant conduct. *Id.*; U.S.S.G. § 5C1.2 cmt. n.3.

As the district court implicitly held, Marshall's murder was "relevant" to Miller's marijuana conviction. Information relating to the conspirators' whereabouts during the time of Marshall's murder was important to the government's investigation, as was information relating to the disappearance of Marshall's truck. *Cf. United States v. Salgado*, 250 F.3d 438, 459 (6th Cir. 2001)

---

[6]In the plea agreement, the parties stipulated that Miller was entitled to the § 3E1.1 reduction.

(holding that "relevant conduct" includes "information regarding the participation of other people in the offense" ); *United States v. Maduka*, 104 F.3d 891, 894 (6th Cir. 1997) (holding that when a defendant's criminal conduct depends upon the active participation of others, information about the others and their participation is "relevant"). That information was relevant not only to pursuing leads in the case, but also to assessing credibility and truthfulness. In other words, the marijuana and murder investigations were inherently interrelated.

That does not mean, however, that Miller was required to disclose all minutiae regarding personal travel plans (or changed plans) and his presence among others, no matter how attenuated, to qualify for safety-valve relief. Miller argues, and we agree, that his decision not to go to Syracuse and his mere presence with Hays and Griffin, without more, were not relevant to Marshall's murder.

Miller's decision not to go to Syracuse the weekend of Marshall's murder was simply not relevant to the murder investigation. While Miller did change his plans "at the last minute," the government does not make the connection between this and Marshall's murder. The lead suspect, Hays, actually went to Syracuse while the victim was alleged to have remained in Kentucky, and the government concedes that Miller played no role in Marshall's murder or its concealment. We simply fail to see, then, how Miller's changed plans were relevant to the murder investigation.

Equally irrelevant to Marshall's murder is the fact that, sometime after Marshall's murder, Miller met with Hays and Griffin after which Hays and Griffin left to dispose of Marshall's truck. The government admits that Hays and Griffin did not discuss their plans with Miller or in his presence. In fact, the government concedes that Miller had no knowledge of their plans from any source, and even after the fact did not know what they had done. Thus, during the investigation, Miller had no reason to believe that the fact of this meeting would be relevant. From his perspective

at the time, it was nothing more than a benign encounter with two men with whom he had presumably had many previous similar encounters. While the undisclosed information may have impacted the government's investigation in retrospect, Miller could not have known of its relevance because he was unaware of the surrounding circumstances.

Had Miller been deceitful or evasive when questioned about these matters, the result would certainly be different. But at the time of the investigation, the government never asked Miller about these matters. Had the information truly been relevant, investigators likely would have made general inquiries into the matters. The government admits that Miller was otherwise forthcoming and, in fact, volunteered in the first place the possibility that Rusty Marshall had been murdered. It would seem rather odd, then, that Miller would have concealed rather innocuous information that would not have incriminated him if he had believed it at all relevant.

Of course, the government need not question a defendant about a fact in order to trigger his duty to disclose under § 5C1.2. *See Adu*, 82 F.3d at 124. All that is required is that the information be "relevant." However, implicit in requiring a defendant to disclose "relevant" facts is the defendant's having reason to believe them relevant. Thus, where, as here, the defendant could not reasonably have known of the relevance of certain information, the benefits of hindsight will not normally disqualify him from safety-valve relief. Otherwise defendants would be encouraged to inundate investigators with trivial details having no obvious connection with the offense of conviction or course of conduct, which would be counter-productive to governmental efforts to identify pertinent information. Under the facts of this case, we conclude that the district court clearly erred in finding that Miller failed to disclose all relevant information.

This conclusion is not in conflict with our decision in *Adu*. In that case, we said that

"[w]here the government challenges a defendant's claim of complete and timely disclosure and the defendant does not produce evidence that demonstrates such disclosure, a district court's denial of a motion under [18 U.S.C.] § 3553(f) and [U.S.S.G.] § 5C1.2(5) is not clearly erroneous." *Id.* at 125. *Adu* does not mean that once the government challenges a defendant's failure to disclose a certain fact, the defendant must either have proof that he disclosed that fact or lose the safety valve. Rather, his burden is to prove "complete and timely disclosure." Whether disclosure was "complete" involves whether disclosure was necessary because the information at issue was relevant. Here, Miller has satisfied his burden that the undisclosed information was not relevant, and, thus, his disclosure was "complete."

## III.

For the foregoing reasons, the judgment of the district court is **VACATED** and the case is **REMANDED** for resentencing.