NOT RECOMMENDED FOR PUBLICATION
File Name: 17a0209n.06

No. 15-2190

**FILED**
Apr 07, 2017
DEBORAH S. HUNT, Clerk

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| SANDRA LEE RESTERHOUSE, | ) | COURT FOR THE WESTERN |
| | ) | DISTRICT OF MICHIGAN |
| Defendant-Appellant. | ) | |
| | ) | |
| | ) | |

BEFORE:     BATCHELDER, ROGERS, and WHITE, Circuit Judges.

ROGERS, Circuit Judge.   Sandra Resterhouse appeals her sentence of 120 months' imprisonment for possessing methamphetamine with the intent to distribute, in violation of 21 U.S.C. § 841.  At her sentencing hearing the Government argued for a two-level decrease in her offense level under the safety-valve benefit of USSG § 5C1.2.  The district court denied that relief, however, citing Resterhouse's apparent solicitation of a co-defendant to kill another man who had attacked her during an argument over the theft of some of the drug conspiracy's proceeds.  Resterhouse now challenges that denial, arguing that her solicitation threat was not made in connection with her offense and was not credible in any event.  But because the district court based its safety-valve ruling on a permissible reading of the record evidence, the denial of that relief was not erroneous.  Moreover, Resterhouse's remaining claims on appeal—that the

district court erroneously denied her another four-level § 5K.1 reduction, and that the resulting sentence was procedurally and substantively unreasonable—also lack merit.

I.

This case arises from Resterhouse's indictment for possessing with the intent to distribute some 3.8 kilograms of methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 841(b)(1)(C). After Resterhouse was individually charged, a superseding indictment added a count against co-defendants Jeffrey Vereeke and Eugene Redding, charging both men, among other things, with conspiring with Resterhouse to possess and distribute 500 grams or more of methamphetamine as well as less than 50 kilograms of marijuana.

Resterhouse eventually agreed to plead guilty. In return, the Government agreed, among other things, not to oppose her request pursuant to USSG § 3E1.1(a) for a two-level downward adjustment for accepting responsibility for her offense, and also to move for a further one-level reduction for acceptance of responsibility under USSG § 3E1.1(b). In addition, both parties stipulated that the amount of actual methamphetamine that should be used in determining her sentencing guidelines range was 1.5 to 5 kilograms.

At Resterhouse's sentencing hearing, the district court accepted the conclusion of the presentence investigation report setting her base offense level at 36 and her criminal history score at 0, placing her in criminal history category I. Also in line with that report, the court granted Resterhouse a three-level decrease in her offense level under USSG § 3E1.1(a) and § 3E1.1(b), as provided in her plea deal. Together those adjustments lowered Resterhouse's offense level to 33, amounting to a Guideline range of 135 to 168 months' imprisonment, USSG, Sentencing Table, Ch.5, Pt.A.

The presentence report also indicated that Resterhouse was eligible for the safety-valve benefit under USSG § 5C1.2, qualifying her for another two-level decrease in the offense level under USSG § 2D1.1(b)(17).[1] That conclusion, moreover, was accepted by both Resterhouse and the Government, and both sides accordingly pressed the district court to grant the safety-valve reduction at her sentencing hearing. Qualifying for safety-valve relief required Resterhouse to meet all five of the criteria laid out in 18 U.S.C. § 3553(f), including, as relevant here, the requirement that she not have "use[d] violence or credible threats of violence . . . in connection with the offense," 18 U.S.C. 3553(f)(2). Ultimately, however, the district court concluded that Resterhouse could not satisfy this requirement, pointing to an incident that had occurred not long after the authorities raided the home of her co-defendant Vereeke.

According to the presentence report, after the raid Resterhouse delivered some $20,000 worth of marijuana and $80,000 in cash to her friend Jeff Slack, to keep hidden from investigators. Resterhouse soon learned, however, that shortly after receiving her stash Slack had invested $50,000 in his marijuana dispensary business—money that she naturally suspected had been lifted from her hidden trove. Resterhouse confronted Slack, and during the ensuing argument Slack struck her, fracturing her sternum. Resterhouse apparently told Redding, her confederate and eventual co-defendant, about the incident. Redding, who was actually acting as an informant for the government at this point, reported the incident to authorities, and "stated Ms. Resterhouse wanted him to kill Mr. Slack for her, but he would not do it." Later, at the government's direction, Redding placed a recorded call to Resterhouse, and in the eleven-and-a-half minute conversation that followed Resterhouse once again solicited him to kill Slack. As summarized in the presentence investigation report:

---

[1] For a § 841 offense like Resterhouse's, USSG § 2D1.1(b)(17) provides that a defendant who meets the criteria of § 5C1.2 is eligible for a two-level decrease in her offense level.

> . . . Ms. Resterhouse discussed Mr. Redding visiting Mr. Slack under the guise of trying to learn about growing marijuana. While ascertaining if Mr. Slack was alone at his warehouse, Mr. Redding could "take" Mr. Slack and/or "drop him there, and pour some gasoline on his ass and walk out . . ." Ms. Resterhouse also noted the warehouse flooring was wood. Throughout the recording, the goal appeared to be Mr. Redding retrieving a black satchel and getting out, walking away clean. Reference to knocking out Mr. Slack was made a couple of times. Mr. Redding discussed stealing some steel from the warehouse, which Ms. Resterhouse counseled against, as he would then get caught if he started stealing/taking stuff, suggesting he could take Mr. Slack's truck, which would likely have tools in it. This was dismissed by Mr. Redding, who noted he has more tools than he knows what to do with.

Resterhouse later explained that she was merely "expressing her anger toward Mr. Slack and talking to Mr. Redding out of frustration," and that "she never expected or intended Mr. Redding to do anything." The authorities, at least initially, thought differently: after the plot came to light she was detained as a risk to public safety. Eventually, however, the Government came around to Resterhouse's view, and agreed with the presentence report that even if her statements "could be considered to be of a threatening nature," they were not "serious enough . . . [to] be deemed a credible threat of violence."

The district court, however, disagreed. Although the court allowed that "[w]hether [Resterhouse] ultimately thought at the time she'd follow through or not is a tough thing to figure out," it nevertheless explained that:

> We know that she was at least was willing to talk about it for 11 1/2 minutes at a time when she knew she was under investigation and that the government was closing in and when we know she had plenty of motive to hurt somebody or kill somebody like Mr. Slack. And we know that it was enough, at least at the outset of this case, for the government to believe and for the magistrate to believe that detention was appropriate despite a criminal history category of I. And finally, that even a month ago it was sufficient disclosure for the government to support 5K credit for the person coming forward.

On that basis the court concluded that "Resterhouse [had] used a credible threat of violence by soliciting, through Mr. Redding, [the] killing [of] another person involved in the distribution," and thus denied her the benefit of the two-level decrease under § 5C1.2's safety valve.

In addition to the safety-valve benefit, the Government moved for a four-level decrease in offense level under USSG § 5K.1.1, based on the assistance that Resterhouse had offered law enforcement in unraveling the details of the distribution scheme. But the district court again disagreed:

> From my perspective the substantial assistance value on the record at this point doesn't exceed two levels. It may well lead to more later. There might be actions taken that are concrete, demonstrable, and obvious to the Court and would be the proper subject of a Rule 35 credit. But at this point it's somebody who has proffered, who has testified about things involving the codefendants, possibly some other people who were involved then in supplying the codefendants out west, but I wouldn't credit that more than two levels now.

As a result of this two-level § 5K credit, Resterhouse's offense level was lowered to 31, which, with her criminal history category set at 1, placed her in the Guideline range of 108 to 135 months' imprisonment, USSG, Sentencing Table, Ch.5, Pt.A.

The court sentenced Resterhouse to 120 months' imprisonment. The court made clear, however, that it would have arrived at the same "bottom line" even if it had granted Resterhouse the two-level decrease under § 5C1.2's safety valve, given the weight of the "culpability factors" that the court believed had "distinguish[ed] Ms. Resterhouse from the other defendants."[2] Resterhouse now appeals that sentence.

## II.

Resterhouse first challenges her sentence on the ground that the district court clearly erred by denying her § 5C1.2's safety-valve relief over her apparent attempts to solicit Slack's murder. On appeal she raises two objections to that denial: that that threat was not made in connection with her underlying offense, thus falling outside the scope of § 5C1.2, and that her threat was not credible in any case. Neither argument is persuasive.

---

[2] Those factors include Resterhouse's centrality in the drug scheme, as well as her flight from authorities, her attempt to hide the $80,000 in drug money, her initial lies to law enforcement about the scheme, and the threat she made against Slack.

Because Resterhouse's two attempts to get Redding to kill Slack could be seen as credible threats made in connection with her underlying § 841 offense, the district court did not err in refusing to grant Resterhouse the safety-valve relief that she and the Government sought. In order to qualify for safety-valve relief under § 5C1.2, Resterhouse was required to show by a preponderance that she had met all of § 5C1.2's requirements, *see United States v. Bolka*, 355 F.3d 909, 912 (6th Cir. 2004), including the requirement that she had not made a credible threat of violence in connection with her offense, *see* 18 U.S.C. § 3553(f)(2). As the district court explained, however, Resterhouse did just that: she asked her confederate Redding, not once but twice, to kill Slack for allegedly stealing the bulk of the drug money she had stashed with him after the raid on her other confederate's home. The second conversation, summarized in the presentence report, suggests that Resterhouse was serious about Slack's killing: in that eleven-and-a-half minute phone call with Redding she detailed for him where and how he could kill Slack, all while aware that she was under investigation by law enforcement. Her threat was apparently credible enough, moreover, to convince law enforcement to detain her as a risk to public safety and to persuade the Government to file a § 5K motion on Redding's behalf for reporting that threat. Further, the Government admitted that "nothing changed" between the filing of that § 5K motion and Resterhouse's hearing that would have diminished that threat's initial credibility. Thus there was considerable support for the district court's conclusion that Resterhouse's threats against Slack were real and credible, rendering her ineligible for safety-valve relief. Even if the district court might have weighed the evidence more favorably to Resterhouse, as she effectively urges this court to do, that alone would not establish that the district court had clearly erred in weighing the evidence as it did. *See Anderson v. Bessemer City*, 470 U.S. 564, 573-74 (1985).

Resterhouse raises several objections to this conclusion, though none is compelling. First, Resterhouse asserts that her threats were a "collateral matter" and thus not made "in connection with" her underlying offense of possessing with the intention of distributing methamphetamine, as required to disqualify her from safety-valve relief, *see* 18 U.S.C. § 3553(f)(2). But as the district court pointed out, the target of the threat—Slack—was in fact "involved in the distribution" scheme to at least some degree, having agreed to hide the $80,000 in cash and some $20,000 in marijuana Resterhouse asked him to stash away. Moreover, the dispute that led Slack to assault Resterhouse and Resterhouse to threaten Slack arose only because Slack had apparently stolen some of those criminal proceeds. It is therefore hard to see how Resterhouse could claim, let alone by a preponderance, that her threat was not connected to her offense. Even if that view of the evidence were possible, it hardly makes the district court's contrary finding "inherently implausible." The mere possibility of a contrary view cannot justify the reversal of the district court's essentially factual finding on this point. *See Anderson*, 470 U.S. at 574.

Resterhouse also challenges the district court's finding as to the threat's credibility as "inherently implausible," arguing that her conversation with Redding was instead just an "addled rant" not seriously intended to solicit him to kill Slack. But the district court gave several reasons why it saw Resterhouse's threat as more credible than either Resterhouse or the Government did at the time of her sentencing. Not least among those was law enforcement's view not long before that hearing that Resterhouse's threat was credible enough to warrant her detention as a public safety risk, the Government's request for § 5K credit for Redding based on his disclosure of that threat, and the fact that, by the Government's own admission, nothing had changed in the weeks between the submission of the Redding § 5K motion and Resterhouse's

sentencing hearing that would have diminished that threat's credibility. So long as "the district court interprets the evidence in a manner consistent with the record," we must uphold that court's factual judgment, *United States v. Darwich*, 337 F.3d 645, 663 (6th Cir. 2003). Here, the district court clearly explained its reasons for finding Resterhouse's threats more credible than the Government did at her sentencing, and it drew those reasons from a plausible reading of the record. That conclusion was therefore not clearly erroneous, nor, consequently, was the district court's determination that Resterhouse had failed to prove her entitlement to safety-valve relief.

III.

Resterhouse next argues that the district court erred by improperly considering her threat against Slack, as well as the possibility of a future Rule 35(b) reduction, when the court decided to grant her only a two-level rather than a four-level reduction under § 5K.1. Resterhouse's challenge could therefore be framed in either of two ways: as an attack on the substantive reasonableness of her sentence, calling for review under an abuse-of-discretion standard, *see Gall v. United States*, 552 U.S. 38, 41 (2007), or alternatively as an attack on that sentence's procedural reasonableness, requiring instead plain-error review given that Resterhouse failed to object when provided the opportunity to do so, *see United States v. Vonner*, 516 F.3d 382, 385-86 (6th Cir. 2008) (en banc). This court has yet to settle which of these is the more appropriate way to frame a challenge like Resterhouse's, attacking the district court's alleged consideration of improper factors during sentencing. *See United States v. Judge*, 649 F.3d 453, 461 (6th Cir. 2011).[3] But we need not resolve that question in this case, because no matter the standard, Resterhouse cannot show that the district court improperly considered either factor when weighing the § 5K.1 reduction.

---

[3] Resterhouse, for her part, has urged this court to review her challenge as an abuse of discretion, while the Government instead argues that the appropriate standard is plain error.

Resterhouse cannot succeed in her challenge to the district court's § 5K.1 ruling for a simple reason: the court neither considered Resterhouse's threat against Slack nor improperly weighed the possibility of a future Rule 35(b) reduction when it declined to grant her more than a two-level reduction. Resterhouse argues that neither her threat nor a possible future Rule 35(b) reduction would have been permissible considerations to weigh in a § 5K.1 ruling. But the sentencing record does not bear out Resterhouse's contention that the district court improperly weighed either when it ruled on the § 5K.1 motion. Indeed, the district court made no mention at all of Resterhouse's threat against Slack, and Resterhouse offers no more than a bald assertion to the contrary. The court did allude to the possibility of a later Rule 35(b) credit. But we have held that the mere mention of such a possibility will generally not infect a § 5K.1 ruling with reversible error, unless the "text and context of the record" reveal that that possibility had "altered or influenced" the district court's ruling. *United States v. Ridge*, 329 F.3d 535, 542 (6th Cir. 2003). In this case, the record reveals no such influence: the court carefully explained that its decision turned on the cooperation that Resterhouse had given up to that point, and, much like in *Ridge*, *see id.* at 542-43, its only allusion to a Rule 35(b) reduction came as a reminder of its possibility should Resterhouse's later cooperation justify one. Unlike in cases where this court has found the kind of improper consideration that Resterhouse alleges, the district court here made no suggestion that it was *basing* its ruling on the possibility of a future Rule 35(b) credit. *See, e.g.*, *United States v. Bureau*, 52 F.3d 584, 588 (6th Cir. 1995). Indeed, its choice of wording ("but at this point") appears to signal just the opposite: the mention of Rule 35(b) credit may have come in the same breath as the § 5K.1 discussion, but they were meant as distinct, and unconnected, remarks. Thus the record does not bear out Resterhouse's contention that the district court improperly considered either her threat against Slack or the possibility of a future

Rule 35(b) credit when it declined to grant her more than a two-level § 5K.1 reduction.  Whether we apply an abuse-of-discretion or a plain-error standard, then, that decision was not improper.

IV.

Finally, Resterhouse challenges her sentence as also procedurally and substantively unreasonable: procedurally unreasonable, because it was allegedly based on "an erroneous Guidelines calculation;" and substantively unreasonable, because the district court allegedly did not explain its sentence adequately, and improperly focused on Resterhouse's threat against Slack.  Neither argument is convincing.  Because the district court correctly calculated the Guidelines range and weighed § 3553(a)'s other factors when it explained why it chose the sentence it did, Resterhouse's sentence is not procedurally unreasonable.  That procedural reasonableness, moreover, means that Resterhouse's sentence must be presumed substantively reasonable, and she has failed to offer any reason that would rebut that presumption.  In both respects, then, the district court's sentence, reviewed here for an abuse of discretion, *see Gall v. United States*, 552 U.S. 38, 56 (2007), was reasonable.

Two considerations make clear that Resterhouse's sentence was procedurally reasonable: the Guidelines calculation on which it was based was sound, and the district court clearly explained why it believed the other § 3553(a)'s factors justified that sentence.  The procedural reasonableness of a sentence turns on whether the district court "(1) properly calculated the applicable advisory Guidelines range; (2) considered the § 3553(a)'s factors . . .; and (3) adequately articulated its reasoning for imposing the particular sentence chosen." *United States v. Barahona-Montenegro*, 565 F.3d 980, 983 (6th Cir. 2009).  Here the district court did exactly that.  Resterhouse had in her possession some 8.5 pounds, or 3.8 kilograms, of methamphetamine, for which the appropriate base offense level is 36, as the district court

-10-

concluded. With the three-level decrease for accepting responsibility under § 3E1.1(a) and (b), along with the two-level § 5K.1 reduction discussed above, Resterhouse's offense level was accordingly lowered to 31, which for a criminal history of category I amounts to a Guidelines range of 108 to 135 months, USSG, Sentencing Table, Ch.5, Pt. A.[4] Thus Resterhouse's 120-month sentence falls squarely within the correct Guidelines range. Furthermore, the district court expressly weighed a number of § 3553(a)'s other factors when reaching its "bottom line" of 120 months, including the nature of Resterhouse's offense, the role she played in the distribution scheme and her resulting level of culpability, and her history of "personal trauma" and resulting struggles with mental health. The court's lengthy discussion of these factors is therefore a far cry from cases like *Barahona-Montengero*, where the district court erred by failing to focus on any of the relevant factors under § 3553(a), *see* 565 F.3d at 984. On the contrary, here the district court fleshed out its reasons for imposing the sentence it did, and did so based on a sound Guidelines calculation. Thus its chosen sentence was procedurally reasonable.

That sentence was also substantively reasonable. Sentences within a defendant's Guidelines range are presumed to be substantively reasonable. *E.g.*, *United States v. Pirosko*, 787 F.3d 358, 374 (6th Cir. 2015). Here that presumption is not overcome. As explained, the sentence was in the properly calculated Guideline range, so the presumption applies. Resterhouse attempts to rebut the presumption by pointing once again to the district court's allegedly improper consideration of her threat against Slack. But even aside from the fact that that consideration speaks to the circumstances surrounding Resterhouse's offense as well as her

---

[4] Resterhouse contends that the Guidelines calculation was "a bit confused" because the presentence report had indicated that Resterhouse's offense level should be 31, with a criminal history category of I, yielding a Guidelines range of 108 to 135 months before any further reductions. Thus, Resterhouse argues, because the district court later granted the two-level § 5K.1 reduction, her resulting offense level should have fallen to 29, which within the same criminal history category would have produced a Guidelines range of 87 to 108 months. But the confusion here is Resterhouse's. As the Government points out, the presentence report had calculated the offense level as 31 only because it had incorporated the two-level safety-valve reduction—a reduction that the district court would later deny. As explained above, the court's calculation was in fact correct.

history and other characteristics—factors expressly made relevant under § 3553(a)(1)—Resterhouse has also failed to cite any case suggesting that consideration of a threat like the one she made would rebut the presumption of her sentence's substantive reasonableness. Her sentence was therefore substantively as well as procedurally reasonable.

V.

We accordingly affirm the sentence of the district court.